## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **DARREN KAPLAN, SHIRLEY KAPLAN,** | ) ) ) | |
| Plaintiff (s), | ) ) | **Case No.** |
| v. | ) ) | |
| **CITIMORTGAGE, CENLAR FSB,** | ) ) | **Trial by Jury Demanded** |
| Defendant (s). | ) ) ) ) | |

## COMPLAINT

Plaintiffs, Darren Kaplan and Shirley Kaplan, by and through Charles Wallshein Esq. as counsel, for the Complaint against Defendants, CitiMortgage, CENLAR FSB, state as follows:

## INTRODUCTION

1.     In January 2013, the Consumer Financial Protection Bureau ("CFPB") issued several final rules concerning mortgage markets in the United States, pursuant to

the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

2.      Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR 10901 (Regulation Z)(February 14, 2013) and 78 FR 10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014.

3.      The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 12 C.F.R. §1024.2 (b) of the said Regulations.

4.      The Defendants in this case are subject to Reg X and Reg Z and RESPA and TILA generally.

5.       Plaintiffs' claims are based upon the Defendants' unlawful conduct during the loan modification process both prior to and during the state court foreclosure action.

6.      There is a foreclosure action pending against in Supreme Court, State of New York, County of Suffolk, Index Number 66477/201, wherein the successor in interest to Defendant-Trust *US Bank National Association As Trustee For CMALT REMIC Series 2006-A5 – REMIC Pass-Through Certificates Series 2006-A5* (hereinafter "Defendant-

Trust") seeks to foreclose the Plaintiffs' home located at 85 Derby Lane, Greenlawn, New York.

7.     At all relevant times CitiMortgage, has acted as the lawful agent for Defendant Trust in its role as Master Servicer for the Trust and as the loan Servicing Agent for the Trust.

8.     Upon information and belief CitiMortgage transferred the default servicing responsibilities for the loan servicing responsibilities on the Kaplan loan to CENLAR FSB.

9.     Plaintiffs claim that Defendants committed fraud against Defendant including violations of 12 C.F.R. §1024.41. Plaintiff seeks monetary damages as relief pursuant to RESPA and pursuant to New York General Business Law §349 and for civil fraud under New York common law.

## PARTIES, JURISDICTION, AND VENUE

10.     Plaintiffs Darren Kaplan and Shirley Kaplan, His wife ("Kaplan" or "Plaintiffs") are the owners of the real property located at 85 Derby Lane, Greenlawn, New York (the "Home").

11.     At the time of the execution of the mortgage, Darren Kaplan and Shirley Kaplan are seized of a fee simple interest in the property and has maintained and currently maintains the Home as their primary, principal residence. Plaintiffs are residents of the

State of New York, County of Suffolk. Darren Kaplan is the only obligor on the note. The mortgage identifies and describes both Darren Kaplan and Shirley Kaplan as "Borrowers".

12.    As of the time of the filing of this complaint Defendant CENLAR is the servicer of a note executed by Plaintiff (the "Note") and a mortgage on the Home executed by Plaintiff that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

13.    The Trust is formed under the laws of the State of New York.

14.    Defendant *U.S. Bank National Association, As Trustee* has its principal place of business in the State of Ohio.

15.    CitiMortgage, Inc. [hereinafter, "Citi" or "CitiMortgage"] is the ~~loan~~ servicing agent for the Trust.

~~16.~~    At all relevant times herein CitiMortgage, Inc. is the Master Servicer for Defendant-Trust. The Pooling and Servicing Agreement that governs the Trust specifically gives CitiMortgage as the Master Servicer the authority to appoint a sub-servicer to manage the day to day servicing functions for the Kaplan loan and for other loans that may or not be in default. See Pooling and Servicing Agreement, attached hereto as Appendix "A".

17.    Defendant, CitiMortgage, is a banking corporation and National Association organized under the laws of the United States of America, with a principal place of business in the State of New York.

18.    On or about July 1, 2019 the day to day loan servicing responsibilities for the Kaplan loan transferred to CENLAR, FSB. CENLAR is a federal savings bank with its principal place of business in the State of New Jersey.

19.    All servicing duties and functions are conducted in CENLAR's name are conducted with the authority of CitiMortgage.

20.    CENLAR has no independent authority to service the loan or to make any decision concerning the modification fo the loan.

21.    Loan Servicing duties conducted by CENLAR are conducted at the express direction of CitiMortgage.

22.    CENLAR and CitiMortgage have engaged in a pattern and practice of violation of state and federal law as if the two acted as one entity.

23.    CENLAR and CitiMortgage are jointly and severally liable for the loan servicing violations and duplicitous misconduct amounting to unfair and deceptive practices and under a theory of principal-agent and alter ego.

24.     At all times hereinafter mentioned, pursuant to 12 C.F.R. §1024.31, Loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower.

25.     At all times hereinafter mentioned, pursuant to 12 C.F.R. §1024.31, *Loss Mitigation Application* means an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option.

26.     At all times hereinafter mentioned, pursuant to 12 C.F.R. §1024.31, *Loss Mitigation Option* means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower.

27.     At all times hereinafter mentioned, pursuant to 3 NYCRR 419.1(c), *Loan Modification* means waiver, modification or variation of any material term of the mortgage loan, irrespective of whether the duration is short-term, long-term or life-of-loan, that changes the interest rate, forbears or forgives the payment of principal or interest or extends the final maturity date of the loan.

28.     The issues presented in this litigation concern Plaintiffs' claims against CitiMortgage for mortgage loan servicing misconduct concerning violations of New York State and federal law.

29.     The issues presented in this litigation concern Plaintiffs' claims against CENLAR FSB, (hereinafter "CENLAR") as the successor servicing agent to CitiMortgage on behalf of the Trust for mortgage loan servicing violations of federal Law and violations of State Law.

30.     The issues presented in this litigation concern Plaintiff's claims against Defendants pursuant to a federal question.

31.     State law also provides additional remedies to Plaintiff not available pursuant to federal law.

32.     All claims herein pursuant to federal and state law arise under a common nexus of facts.

33.     Plaintiff's supplemental claims pursuant to New York law may be heard in this Court pursuant to 28 U.S.C. §1367.

34.     Plaintiffs are "consumers" as defined by 15 U.S.C. §1692(a)(3) because they are natural persons allegedly obligated to pay the Loan on the Home.

35.     Plaintiffs are "reasonable consumers" acting reasonably under the circumstances as defined by New York common law.

36.     The Loan is a "debt" within the meaning of 15 U.S.C. §1692(a)(5) because it arose from a transaction in which the money was used for personal, family, or household purposes. Plaintiffs incurred the Loan to purchase the Home.

37.     At all times relevant, CitiMortgage and CENLAR communicated with Plaintiffs in attempting to collect the Loan on behalf of *U.S. Bank National Association, As Trustee*.

38.     CitiMortgage and CENLAR regularly use the mail and other instrumentalities of interstate commerce to collect or attempt to collect debts owed or due or asserted to be owed or due another.

39.     CitiMortgage regularly and often represents the owners of mortgage notes such as the defendant Trust and regularly engages in collection through foreclosure of debts owed by consumers or communicates with mortgagors with respect to the servicing of residential mortgage loans.

40.     CitiMortgage is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

41.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, to wit; RESPA and the FDCPA.

42.     The case in controversy exceeds the threshold dollar amount for jurisdiction to maintain this action and is between citizens of different states.

43.     This Court has jurisdiction to hear this action pursuant to 28 U.S.C. 1332(a)(1).

44.     The Court has jurisdiction to hear supplemental state law claims pursuant to 28 U.S.C. §1367.

45.     At all times hereinafter mentioned, pursuant to 3 NYCRR §419.7 CitiMortgage and CENLAR as the loan servicers have a duty of fair dealing when engaging in loan servicing activities with consumers.

46.     At all times hereinafter mentioned, pursuant to 3 NYCRR §419.7 CitiMortgage and CENLAR had at respective dates in which each acted as the servicing agents of the loan had and has a continuing duty to make borrowers in default aware of loss mitigation options and services offered by the servicer.

47.     At all times hereinafter mentioned, pursuant to 3 NYCRR §419.10 CitiMortgage and CENLAR had and has a continuing duty to comply with all applicable federal and New York State laws and regulations relating to mortgage loan servicing, including but not limited to RESPA, the Truth-in-Lending Act, 15 U.S.C. section 1600 *et seq.* and regulation Z adopted thereunder, 12 C.F.R. section 226 *et seq*., section 6-k of the Banking Law and article 9, title 3-A, of the Real Property Tax Law.

48.     At all times hereinafter mentioned, pursuant to 3 NYCRR §419.6 CitiMortgage and CENLAR had and have a continuing duty to respond to consumer complaints.

49.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiffs maintain the Home as their primary residence within this District.

## THE MORTGAGE & NOTE

50.     On August 16, 2006 Plaintiff Darren Kaplan borrowed the sum of $568,000 from Precision Financial, Inc., See **Exhibit "A" [Complaint Attachment "1-1"]**, Note, And **Exhibit "B"**, **[Complaint Attachment "1-2"]** Mortgage.

51.     On or about January 11, 2011 CitiMortgage and Darren Kaplan entered into a mortgage modification agreement wherein the mortgage modification agreement altered the interest rate on the note pursuant to a "step" mortgage modification. See **Exhibit "C" [Complaint Attachment "1-3"]**,

52.     Upon information and belief, the note was assigned to CitiMortgage in November 2012.

53.     Through an assignment of the note to the Trust on or about May, 2014, U.S. Bank as Trustee has the right as the holder of the note to collect payment under the note by and through its Master Servicer and loan servicing agent, CitiMortgage.

54.     Upon information and belief, as of April 1, 2019, CENLAR FSB has assumed the sub-loan servicing responsibilities for the loan from CitiMortgage. See "Hello Letter" April 10, 2019, **Exhibit "D" [Complaint Attachment "1-4"]**. Upon information and belief, as of the date of the assignment of loan servicing to CENLAR, the Trust was the holder of the note.

55.     At all relevant times stated herein, CENLAR is and has been the loan servicing agent for the Trust and or a sub-servicing agent for CitiMortgage concerning Kaplan loan.

## BASIS FOR CLAIMS FOR RELIEF

56.     The Plaintiffs are asserting a claim for relief against the Defendant, CitiMortgage for breach of the specific Rules under Regulation X as set forth below.  The Plaintiffs have a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. §2605(f), and 12 C.F.R. §1024.35 and 12 C.F.R. §1024.41. This action seeks damages for these breaches and demands for includes actual damages, costs, statutory damages and attorney's fees. The Plaintiffs also make claims under state law for violations

of GBL §349 for unfair and deceptive trade practices and the Plaintiffs claim actual damages and punitive damages.

57.     Plaintiff's claims arise pursuant to a set of events involving the foreclosure of the home located in Suffolk County, State of New York.

58.     The basis of the complaint is that defendants CitiMortgage and CENLAR FSB have violated federal and state law by moving the state court foreclosure action to judgment without providing a lawful review of the Plaintiff's loan modification applications. Plaintiff moved for judgment of foreclosure and sale on August 13, 2019 by filing a motion on behalf of he owner of he note with authority pursuant to the Pooling and Servicing Agreement that created the Trust. The motion seeks a judgment of foreclosure and sale and is recorded on the NYSCEF system.

59.     In 2014, *US Bank National Association As Trustee For CMALT REMIC Series 2006-A5 – REMIC Pass-Through Certificates Series 2006-A5,* commenced an action in New York State Supreme Court for the County of Suffolk under Index Number: 66477/2014 to foreclose the Kaplan's home.

60.     Plaintiff-Kaplan made application for mortgage loan modifications while the foreclosure action is pending.

61.     CitiMortgage did not review Plaintiffs for a permanent mortgage modification. Or, if CitiMortgage claims that it did review Plaintiffs for a permanent mortgage modification, then CitiMortgage manipulated the process to deny Plaintiff the ability to submit a meaningful appeal of the denial of the modification.

62.     Defendant's failure to review Plaintiff for a permanent loan modification was an element of Defendant's plan to coerce Plaintiff into a short sale, cash for keys or other non-home retention option. Plaintiff earns and realizes a larger profit from the servicing of a defaulted loan than from servicing of a performing or modified loan. Moreover, once the Defendant's loan is modified by CitiMortgage and then by CENLAR the discount on the note would be impacted such that the loan as a performing loan is less desirable and less valuable to purchasers of the modified note on the secondary market. CitiMortgage has a financial incentive not to modify Plaintiff's loan and has engaged in deceptive practices to obstruct and obfuscate the loan modification process so that the Kaplan's application would result in a denial.

63.     The statutory scheme is in place specifically to prevent the outcome that result that Plaintiff experiences here. Plaintiff seeks to apply the statutory scheme to recover damages from Defendants for violations of 12 C.F.R. §1024.35, 12 C.F.R. §1024.36, 12

and §1024.41 for failing to properly review Plaintiffs for a loan modification and for unlawfully advancing the foreclosure to judgment of foreclosure and sale.

64.    The practice described above is known as "dual tracking" and was engaged in by CitiMortgage and CENLAR. Said practice is unlawful pursuant to 12 C.F.R. §1024.41(g) and pursuant to New York State laws, specifically 3 NYCRR §419.7, 3 NYCRR §419.10.

65.    Plaintiffs also seek damages from Defendants for its failure to correct errors of which Defendant was given lawful notice pursuant to 12 C.F.R. §1024.35. Specifically CitiMortgage's failure to provide accurate information to thee Borrowers pursuant to 12 C.F.R. §1024.35(7) and 12 C.F.R. §1024.35(11). Exhibit "E" infra.

66.    Plaintiffs also seek damages pursuant to GBL §349(a) based upon civil fraud by CitiMortgage's and CENLAR's unfair and deceptive trade practices arising from their failure to have adequate processes and procedures to properly address and process requests for mortgage assistance in compliance with CitiMortgage's and CENLAR's legal responsibilities.

67.    Plaintiffs believe that the statutory regime is designed to make the mortgage modification process transparent. The statutory regime is designed to ensure that borrowers have a statutory right to determine and review all documents that concern the servicing of

their mortgage loan.  This includes the valuation of their homes, the instruments upon which the payment is based and calculated. It further includes the right to see a complete accounting for all monthly principal, interest, taxes and insurance paid on behalf of the borrowers.

68.    Where borrowers seek mortgage assistance and permanent mortgage modification, the statutory scheme ensures that the applicants for permanent mortgage modification are made aware of all loss mitigation options available to them. If certain options are not available, the servicer, here CitiMortgage and CENLAR, must provide a reasonable explanation as to why the options are not available to the borrowers pursuant to 12 C.F.R. §1024.41(d) and 12 C.F.R. §1024.41(c).

69.    Where borrowers' application for a mortgage modification is denied, the statute provides for a written explanation of the denial and an appeal process pursuant to 12 C.F.R. §§1024.41(d) and (h).

70.    The statutory scheme is designed to ensure that borrowers who apply for loan modifications are evaluated fairly and that the programs and criteria under which they are reviewed are made transparent and applied equitably and fairly.

71.    The borrowers have the right to seek specific information concerning the mortgage servicing of their loan pursuant to 12 C.F.R. §1023.36.

72.    Plaintiff served CitiMortgage with requests for information pursuant to 12 C.F.R. 1023.36.

73.    Plaintiff also served CitiMortgage with notices of error pursuant to 12 C.F.R. §1024.35.

74.    CitiMortgage failed to timely provide accurate information pursuant to 12 C.F.R. §1024.36.

75.    CitiMortgage failed to correct its errors pursuant to 12 C.F.R. §1024.35.

76.    CitiMortgage's conduct violate its respective legal obligations under RESPA.

77.    CitiMortgage's conduct is deceptive and unfair by establishing policies and procedures that are in derogation of their respective legal obligations under State and Federal law with respect to the processing of requests for mortgage assistance or loss mitigation.

78.    CitiMortgage solicited the Kaplans and consumers at large to modify their mortgages by the use of form letters mailed to the consumers at their respective homes or to their attorneys. Once the consumer-borrowers apply for loss mitigation CitiMortgage continued to communicate with consumers by form letters that are likely mailed to tens of thousands of borrowers who are trying to modify their mortgages so that they can avoid foreclosure.

79.     CitiMortgage's conduct, policies and procedures result in steering consumers away from affordable permanent mortgage modifications and ultimately cause needles harm to consumers rather than help consumers. The harm caused results in the loss of consumers' homes to foreclosure where a home retention option is otherwise available.

80.     CitiMortgage's conduct here is a matter of standard policy in that each has a duty as a loan servicer to review all delinquent borrowers that apply for loan modifications under procedural and substantive rules and laws established by New York State, federal law pursuant to RESPA and pursuant to rules established by the Department of the Treasury.

81.     Plaintiff is a consumer and CitiMortgage's acts are directed specifically against Plaintiffs as consumers and generally as a class of consumers at large.

82.     CitiMortgage's conduct is unfair and deceptive and violates the obligations of good faith imposed under New York State Law and its obligations under RESPA and other federal laws.

83.     CitiMortgage's conduct specifically injured the plaintiff in this action and said conduct is the direct proximate cause of the harm and injuries to the Kaplans and mortgagors as consumers that CPLR §3408, 3 NYCRR §419, and RESPA are meant to

prevent.[1] By engaging in this unlawful conduct CitiMortgage has caused Plaintiff to suffer economic and non-economic damages. The purpose of the federal and state laws is to make the loan modification application process transparent and to give the borrower who has been unlawfully denied remedies at law to seek damages against the loan servicer that violates the law.

84.     At times material to this action CitiMortgage were acting as the agent of the Trust. There is a written agreement designating CitiMortgage as the agent of U.S. Bank as the Trustee and the relationship of the parties and their course of conduct establishes their principal agent relationship such that *U.S. Bank National Association* is liable for the actions of CitiMortgage in this matter through the doctrines of apparent agency, actual agency, respondeat superior, alter ego and principal-agent liability.

85.     CitiMortgage's conduct results in the denial of the Plaintiffs' opportunity to obtain an affordable permanent mortgage modification while denying the Plaintiffs' rights to review the criteria used by CitiMortgage for transparency, accuracy and truthfulness. Foreclosure defendants lose equity in their homes and are deprived of possession of their homes due to foreclosure where a viable home retention option is available.

---

[1] 3 NYCRR §419.10(a)(1) identifies the purposes of the Rule as to prohibit loan servicers from "**engaging in unfair or deceptive business practices** or misrepresenting or omitting any material information in connection with the servicing of a mortgage loan . . . "

86.     Plaintiffs have been damaged by Defendants' conduct and seek actual damages, statutory damages and punitive damages as allowed under the law, as a jury deems proper and may award.

## PLAINTIFF'S LOAN MODIFICATION APPLICATIONS

87.     Since the commencement of this action, Defendants have applied for a loan modification with CitiMortgage on three separate occasions in May 2016, January 2017, October 2018 and again to CENLAR, the default loan servicer as recently as April 2019 and May 2020.

88.     Defendant maintains that he has been able to meet the criteria for approval for a HAMP Tier II modification while that program was in effect and available to borrowers. Since the expiration of the HAMP program Defendant has applied for loss mitigation with CitiMortgage and then CENLAR. Plaintiffs believe that Citi performed cursory and unlawful reviews of their loss mitigation applications and that Citi have been and continue to "dual track" their loan.

89.     Dual tracking is prohibited pursuant to state and federal law. Dual tracking is a colloquial term that describes a Mortgagee/Loan Servicer-Plaintiff simultaneously pursuing a mortgage modification and advancing the foreclosure case to judgment and sale.

## The First Application for Modification May 2016
## Pattern And Practice

90.     The instant action was commenced in 2014. Darren Kaplan has been gainfully employed since 2016 and has sufficient income to sustain a modified mortgage payment. The Kaplans began making application for modification of their loan on May 25, 2016. CitiMortgage closed the application submitted in 2016.

91.     Plaintiff appealed the decision and received the attached letter from CitiMortgage dated October 21, 2016 denying the appeal of Citi's prior denial of the Defendants' application for loan modification. Please see **Exhibit "E" [Complaint Attachment "1-5"]**.

92.     Any misfeasance by Defendant-CitiMortgage concerning violations of RESPA from the 2016 application are included here as proof of pattern and practice. No claim is made for violations against CitiMortgage for violations prior to June 2017.

93.     The instant action is timely for all violations by CitiMortgage and CENLAR that occurred after March 2020 due to Executive Order of the Governor of the State of New York.[2]

## The Second Application for Modification Ending June 2017,
## Pattern And Practice

---

[2] See New York Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1 and 202.60, at https://www.governor.ny.gov/executiveorders

94.     On or about January 19, 2017 Defendant applied to CitiMortgage for a second modification. Please see application cover page to establish the date of application. Please see **Exhibit "F" [Complaint Attachment "1-6"]**.

95.     On April 4, 2017 Citi transmitted a denial letter to Defendant. The April 4, 2017 denial letter states that Darren Kaplan was denied the HAMP mod program because the NPV analysis disqualified the loan. The letter also disqualifies Darren Kaplan from the CitiMortgage proprietary modification program because he already exceeded the number of modification available under that program.  **Exhibit "G" [Complaint Attachment "1-7"]**.

96.     On April 14, 2017 Plaintiff transmitted a Notice of Error in response to the denial wherein Plaintiff stated that the review of his loan modification was unappealable because CitiMortgage failed to provide adequate notice of the reason for the denial. **Exhibit "H" [Complaint Attachment "1-8"]**. On that same day Plaintiff transmitted a Notice of Error to CitiMortgage identifying certain errors concerning Citi's review process. See **Exhibit "I" [Complaint Attachment "1-9"]**. On April 18, 2017 Plaintiff transmitted a request for information to CitiMortgage concerning its los mitigation options available for the Kaplans. **Exhibit "J" [Complaint Attachment "1-10"]**.

97.    On April 19, 2017 CitiMortgage transmitted a letter seeking additional documents stating that the documents submitted are "stale". An examination of the documents submitted as of the date of application, January 19, 2017, were in fact all timely. The fact that CitiMortgage did not review the application for more than 120 days does not change the fact that all the submissions in the application were current and timely, and not "stale" as of the date of application. Please see **Exhibit "K" [Complaint Attachment "1-11"]**.

98.    On or about May 3, 2017 CitiMortgage transmitted a letter of denial of Kaplan's appeal of its denial for modification application. Please see **Exhibit "L" [Complaint Attachment "1-12"]**.

99.    On May 24, 2017 Defendant transmitted Request for Information to CitiMortgage in statutory form pursuant to 12 C.F.R. §1024.36. **Exhibit "M" [Complaint Attachment "1-13"]**. The substance of the request was to inquire as to what home retention programs CitiMortgage had available for Darren Kaplan and what programs CitiMortgage had reviewed Darren Kaplan for.

100.    On or about June 5, 2017 CitiMortgage transmitted a letter to Defendant's counsel stating that it had received and reviewed the Requests for Information dated May

24, 2019, and April 18, 2017. See June 5, 2017 letter, **Exhibit "N" [Complaint Attachment "1-14"]**.

101.    The June 5, 2017 letter identifies the May 23 response as a response to a Notice of Error from Citi to Plaintiff, specifically Plaintiff's letter dated April 18, 2017 where Plaintiff requested information concerning questions numbered "3", "4" and "10". **Exhibit "O" [Complaint Attachment "1-15"]**. CitiMortgage's response was purposefully evasive and unresponsive to Plaintiff's Notice of Error and to Plaintiff's subsequent Requests for Information. Moreover, The Citi identifies its response as a response to a Notice of Error. Citi mischaracterizes its response. Plaintiff's letter is a second Request for Information for the same information that had not been previously provided specifically as follows:

> 3. Please provide a list of home retention programs that are available per the investor if this Mortgage Loan.
> 4. Please provide the details for eligibility and qualification of all home retention programs per the investor of this loan.
> 10. "Copies of all lost mitigation rules, polices or procedures that are applicable to the mortgage loan identified herein."

102.    Citi has made intentional misstatements of material fact concerning the reasons for denial of Darren Kaplan's January 2017 mortgage modification application.

## The Third Application for Modification October 2018
## Pattern And Practice

103.    On October 26, 2018 Plaintiff submitted his third application for mortgage modification to Plaintiff CitiMortgage. Please see **Exhibit "P [Complaint Attachment "1-16"]**.

104.    On November 14, 2018 CitiMortgage transmitted a denial letter to Plaintiff. The reason given for the denial is that Plaintiff did not have a temporary hardship and that he received the maximum number of modifications.  Please see **Exhibit "Q" [Complaint Attachment "1-17"]**.

105.    On December 14, 2018 Plaintiff transmitted an appeal letter to CitiMortgage. Please see **Exhibit "R" [Complaint Attachment "1-18"]**. The basis for the appeal is that CitiMortgage failed to provide an adequate basis for the denial and had created false pretexts for the denial.

106.    Plaintiff could not assert fact in his appeal to the denial because the denial was conclusory and unspecific and did not contain information to which the Plaintiff could raise a specific factual objection.

107.    On December 21, 2018 CitiMortgage denied Plaintiff's appeal. The basis for the denial was that Mr. Kaplan "did not meet the program requirement of having a temporary hardship" . . ., and that he "received the maximum number of modifications

under the program". **Exhibit "S" [Complaint Attachment "1-19"]**. The reasons provided by CitiMortgage for the denial of the appeal is likewise conclusory and unspecific.

108.    On or about April 10, 2019 Cenlar Mortgage transmitted to Plaintiff a letter indicating that it had assumed the loan servicing for Plaintiff's loan from CitiMortgage. **See Exhibit "T" [Complaint Attachment "1-20"]**.

### The Fourth Application for Modification May 2019
### Pattern And Practice

109.    On or about May 2, 2019 Plaintiff applied to CENLAR for a fourth modification.

110.    On July 11, 2019 Plaintiff received a letter from CENLAR Mortgage indicating that the application for modification was complete.

111.    On or about August 7, 2019 CENLAR transmitted a letter of denial to Plaintiff. Please see **Exhibit "U" [Complaint Attachment "1-21"].**, letter dated August 7, 2019. The letter indicated that the basis for denial was based upon three programs, Repayment Plan, Forbearance, and the Supplemental Modification.

112.    The reason provided by CENLAR for its denial to the borrower for the "Repayment Plan" is that the borrower's income was insufficient to qualify for homeowner's assistance plan.

113.    The reason provided by CENLAR for the denial to the borrower for its "Special Forbearance" plan is that the account was delinquent past the maximum number of months allowed.

114.    The reason provided by CENLAR for the denial to the borrower for its "Supplemental Modification" is threefold; First, that the borrower's account is not eligible for additional assistance. Second, that the mortgage failed the Net Present Value Test, and third, that the modified principal and interest payment would exceed the targeted principal and interest payment per the investor's requirements.

115.    The boilerplate form letter continued and offered the borrower non-retention options consisting of short sale and deed in lieu of foreclosure.

116.    The letter provided for borrower's right to appeal the August 7, 2019 denial to September 16, 2019.

117.    On August 13, 2019 Plaintiff e-filed served its Notice of Motion for Judgment of foreclosure and sale.

118.    On August 15, 2019 Plaintiff transmitted a Notice of Error to Plaintiff stating that it was engaging in "dual tracking" in violation of 12 C.F.R. §1024.41(g) because the Plaintiff was moving for judgment before the appeal period provided for in its denial letter had expired. Please see **Exhibit "V" [Complaint Attachment "1-22"],** letter dated August

15, 2019. The Notice of Error put Defendants on notice that it had not conducted a lawful review of the application.

119.    On September 16, 2019 Plaintiff-Kaplan transmitted his appeal letter wherein he appealed the denial of his May 2, 2019 application for loss mitigation with a home retention option. Please see **Exhibit "W" [Attachment "1-23"],** letter dated September 16, 2019.

120.    On October 7, 2019 Plaintiff transmitted a Notice of Error to CENLAR identifying CENLAR's violation of 12 C.F.R. §1024.41(g) including CENLAR's failure to address the deficiencies in its review of Plaintiff's applications for mortgage modification. Please see **Exhibit "X" [Complaint Attachment "1-24"],** letter dated October 8, 2019.

121.    Defendants CitiMortgage and CENLAR's use of a form letter to deny the Plaintiffs' loan modification is a per se violation of New York General Business Law §349. Defendant CENLAR and CitiMortgage routinely use identical form letters with nearly identical boilerplate language to transmit denials for loan modifications received from the general public for loans wherein CitiMortgage is the Master Servicer of the loan pool that owns the loan.

122.    At all times the form letters used by CENLAR are mailed to consumers at the direction and upon the instruction of CitiMortgage as Master Servicer for the trust that owns the respective loan.

## **PATTERN & PRACTICE OF SERVICING ABUSE**

123.    CitiMortgage and CENLAR have engaged in a pattern and practice of misconduct with an intent to subvert the consumer protections provided by federal law within the context of this action by on more than three occasions failing to respond to requests for information, failing to correct errors when given legal notice thereof and on at least two occasions moving the matter to foreclosure and sale without conducting a lawful review of Plaintiff's modification application.

124.    CitiMortgage and CENLAR's conduct are aimed at all consumers because the loan servicers communicate with borrowers by using form letters that contain boilerplate language to induce borrowers to apply for loss mitigation and also to inform borrowers of denials of their applications.

125.    These denial letters are generated automatically and have little or no relevance to the merits of the borrowers' applications and provide no basis for the grounds for an appeal under State and federal law.

126.   The Consumer Financial Protection Bureau maintains a database of consumer complaints. The consumer complaints are submitted by the general public and are published on the database. The data base is accessible to the general public and may be found at the footnoted web address.

127.   Plaintiff's counsel searched the CFPB database for mortgage loan servicing complaints for consumers experiencing trouble with loss mitigation, with narratives only, against CitiMortgage between the dates of the parameters entered for the search is all complaints against Citibank [Citibank and CitiMortgage are grouped together] from January 1, 2017 to the May 25, 2021. The search revealed 174 complaint results for home mortgages. Please see PDF printout of the search results annexed hereto as **Exhibit "Y" [Complaint Attachment "1-25"].**

128.   In every complaint identified in Exhibit "Y" the complaining consumer identifies themselves as a person who is "struggling to pay the mortgage." The substance of the complaints to the CFPB is that Citibank/CitiMortgage is unresponsive to their applications for loan modifications. The complaints also indicate that CitiMortgage actively obstructs and frustrates the mortgage modification process to the detriment of consumers that leads to foreclosure.

129.    The consumer complaints from other consumers together with the four unlawfully reviewed applications from the Plaintiff herein establish a pattern and practice that is legally sufficient to establish a threshold record of abuse to satisfy the "pattern and practice" required in the statute.

## FIRST CAUSE OF ACTION; AGAINST CITIMORTGAGE
## FAILING TO CORRECT ERRORS AND FOR DUAL TRACKING PUSRUANT
## TO 12 C.F.R. §1024.35,  12 C.F.R. §1024.41(d) and 12 C.F.R. §1024.41(h)

130.    Plaintiff realleges all facts contained in prior paragraphs as if fully rewritten herein.

131.    Pursuant to 12 C.F.R. §1024.35 Defendant CitiMortgage failed to correct its error(s) in failing to provide adequate information regarding the Plaintiff's requests for information.

132.     On April 14, 2017 Plaintiff transmitted a Notice of Error to CitiMortgage in statutory form pursuant to 12 C.F.R. §1024.35. Plaintiff's Notice of Error specifically addressed certain deficiencies identified here at paragraph "92" of this complaint.

133.    As per the response to the Notice of Error delivered to Darren Kaplan dated May 23, 2017, CitiMortgage failed to correct its failure to address the following requests for information items contained in "RFI #1" which require responses to the following requests:

3.  Please provide a list of home retention programs that are available per the investor if this Mortgage Loan.

4.  Please provide the details for eligibility and qualification of all home retention programs per the investor of this loan.

10. "Copies of all lost mitigation rules, polices or procedures that are applicable to the mortgage loan identified herein."

134.    Plaintiff's May 23 response [annexed to Citi June 5 Letter, part of Exhibit "L"] specifically evaded responding to questions "3", "4" and "10" despite being required by statute to reply accurately. There is nothing privileged or confidential regarding Defendant's request to Plaintiff to identify the loan modification program under which he was reviewed. In fact it is unlawful for Plaintiff not to respond accurately to this request. See 12 C.F.R. §1024.38(b)(2), 12 C.F.R. §1024.41(d).

135.    12 C.F.R. §1024.36 creates a legal duty to respond to requests for the information requested by the borrower pursuant to 12 C.F.R. §1024.38. Defendants CitiMortgage and CENALR violated 12 C.F.R. §§1024.35(e)(1) and (e)(4) when it failed to correct the error respond to the Notice of Error by correcting the failure to respond to said Notice.

136.    12 C.F.R. § 1024.41(c) requires that CitiMortgage describes the servicer's duties in connection with the loss mitigation and loan modification application process.

12 C.F.R. § 1024.41(d) sets forth the requirement that the loan servicer must disclose the "specific reason or reasons" for denial.

137.   CitiMortgage's May 23, 2017 response [annexed to Citi June 5, Letter, part of Exhibit "N"] specifically evaded responding to questions "3", "4" and "10" despite being required by statute to reply accurately. There is nothing privileged or confidential regarding Defendant's request to Plaintiff to identify the loan modification program under which he was reviewed. In fact, it is unlawful for Plaintiff not to respond accurately to this request. See 12 C.F.R. §1024.41(d).

12 C.F.R. § 1024.41(d) ("Denial of loan modification options") states in full:
(d) Denial of loan modification options. If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a *servicer* shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section *the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.* [emphasis added].

138.   12 C.F.R. § 1024.41(h) then sets forth the appeal process after denial of loss mitigation:

(h) Appeal process:
(1) Appeal process required for loan modification denials. If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

(2) Deadlines. A servicer shall permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section.
(3) Independent evaluation. An appeal shall be reviewed by *different personnel* than those responsible for evaluating the borrower's complete loss mitigation application.
(4) Appeal determination. Within 30 days of a borrower making an appeal, the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option. A servicer may require that a borrower accept or reject an offer of a loss mitigation option after an appeal no earlier than 14 days after the servicer provides the notice to a borrower. A servicer's determination under this paragraph is not subject to any further appeal.

139.    Plaintiff has had to engage counsel to enforce their rights under RESPA and have paid attorney's fees to their counsel solely for the purpose of sending requests for information and notices of error and communicating with the Servicer in an attempt to avoid litigation and obtain an affordable loan modification.

140.    CitiMortgage's actions prevented the Plaintiff from obtaining sufficient information to properly evaluate the mortgage relief options available and the criteria under which their application was considered. CitiMortgage has obfuscated the process and made the loss mitigation process opaque so that consumers such as the Kaplans cannot review the information used to formulate the offer for loss mitigation for accuracy.

141.    CitiMortgage's actions have prevented the loan from being modified and caused the foreclosure action to progress to a motion for judgment. The Defendants'

conduct results in the denial of the Plaintiffs' opportunity to obtain an affordable permanent mortgage modification while denying the Plaintiffs' rights to review the criteria used by the Trust and its agents for transparency, accuracy and truthfulness. Foreclosure defendants lose equity in their homes and are deprived of possession of their homes due to foreclosure where a viable home retention option is available.

142.   Defendants' conduct specifically injured the plaintiffs in this action and said conduct is the direct proximate cause of the harm and injuries to the Plaintiffs and to mortgagors as consumers that CPLR §3408, 3 NYCRR §419, and RESPA are meant to prevent.  By engaging in this unlawful conduct Defendants have caused Plaintiff to suffer economic and non-economic damages. Defendants' obstruction of the lawful modification process is the direct cause of the Plaintiff being unable to avail herself of being able to mitigate the arrears and repay the arrears to cure the delinquency pursuant to a lawful process governed by RESPA and 3 NYCRR §419.

143.   Defendants' conduct is not the proximate cause of the Plaintiff's default.

144.   Defendants' conduct is the proximate cause of the Plaintiff's inability to cure the default and all damages that extend from Defendant's unlawful misconduct.

145.   Plaintiffs have suffered actual damages in the form of economic damages resulting from CitiMortgage's misconduct in the form of attorney's fees, accrued mortgage

interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

146.   Plaintiffs have suffered further damage because Plaintiffs would have been eligible for a loan modification under the HAMP guidelines.

147.   But for the unlawful failure to review Plaintiffs for a loan modification and for the resulting denial of the loan modification, Plaintiff have lost substantial equity in their home.

148.   Damages for lost equity are measurable and are not speculative based upon current real estate values and market interest rates as compared to the amount owed by Plaintiffs and the future value of the home capitalized at a fixed interest rate marked to current interest rates or the interest rate at the time of the CitiMortgage's/Defendants' malfeasance.

149.   Plaintiff has also suffered actual damages in the form of noneconomic damages resulting from Citi's misconduct in the form of mental anguish, a category of damages within which Plaintiff include stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of Citi's misconduct on Darren Kaplan's normal life.

WHEREFORE, premises considered, Plaintiff demands judgment against CitiMortgage for all lawful damages in an amount the jury deems reasonable and may award.

## SECOND CAUSE OF ACTION AGAINST CITIMORTGAGE
## CIVIL FRAUD AND FOR UNFAIR AND DECEPTIVE PRACTICES
## PURSUANT TO G.B.L. §349

150. Plaintiff realleges all facts contained in prior paragraphs as if fully rewritten herein.

151. The Plaintiff sought mortgage assistance and permanent mortgage modification. Plaintiff applied for loan applications with CitiMortgage The statute requires that the mortgage loan servicer must provide to Plaintiff a written explanation of the denial and an appeal process pursuant to 12 C.F.R. §§1024.41(d) and (h).

152. The statutory scheme under which the mortgage modification process is governed is meant to allow homeowner consumers in general, and the Plaintiffs specifically, to avoid foreclosure and the loss of his/their home(s) at auction. The statute was created to ensure that loan servicers as defined by statute evaluate homeowner-borrowers fairly and that the programs and criteria under which they are reviewed are made transparent and applied equitably and fairly.

153.    CitiMortgage failed to conduct a lawful review of the borrower's mortgage loan modification applications. CitiMortgage's conduct violate the respective legal obligations due to homeowner consumer borrowers in general and to Plaintiff specifically. Instead of having the mortgage modification application reviewed for a home retention option, Defendants provided Plaintiff with an approval for "short sale", which is a non-home retention option. Short sale is a scenario that allows the borrower to sell the home prior to foreclosure sale on the open market voluntarily prior to judgment to avoid a possible deficiency judgment in the event the lender chooses to pursue that remedy after the foreclosure sale.

154.    The short sale option is designed to permit the owner of the note to mark its tax basis as a loss for tax purposes when in reality the sale of the property is a net gain for the investor-lender.

155.    The modification option is a worst-case scenario for the lender because if the lender modifies the loan it has to maintain reserves of tier 1 capital against the "impaired" non-performing loan for the life of the loan.

156.    CitiMortgage's conduct is specifically designed to defraud consumers by establishing policies and procedures that are in derogation of legal obligations under State

and Federal law with respect to the processing of requests for mortgage assistance or loss mitigation.

157.   The form letters used by CitiMortgage to communicate with borrowers concerning loan modifications are intentionally deceptive and harmful because the letters are based upon false information concerning the results of erroneous and misleading reviews of loan modification applications by the loan servicers.

158.   When Plaintiff made specific requests pursuant to law to regarding each respective loan servicer's policies and procedures, the requests were ignored.

159.   CitiMortgage's conduct, policies and procedures result in steering consumers away from affordable permanent mortgage modifications and ultimately cause needles harm to consumers rather than help consumers. The harm caused results in the loss of consumers' homes to foreclosure where a home retention option is otherwise available.

160.   CitiMortgage's conduct here is a matter of standard policy in that as loan servicers, each has a legal obligation to review all delinquent borrowers that apply for loan modifications under procedural and substantive rules and laws established by New York State, federal law pursuant to RESPA and pursuant to rules established by the Department of the Treasury. The suppression or omission of these facts from consumers seeking

mortgage assistance thwarts consumers' rights to access this information and make informed decisions about offers of mortgage assistance.

161.   Plaintiff has suffered actual damages in the form of economic damages resulting from CitiMortgage's misconduct in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

162.   Plaintiff has suffered actual damages in the form of noneconomic damages resulting from CitiMortgage's misconduct in the form of mental anguish, a category of damages within which Plaintiff has suffered include stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of their misconduct on Darren Kaplan's normal life.

WHEREFORE, premises considered, Darren Kaplan demands judgment against CitiMortgage for all lawful damages in an amount the jury deems reasonable and may award.

## THIRD CAUSE OF ACTION AGAINST CITIMORTGAGE AND CENLAR FSB JOINTLY, VIOLATION OF NY GBL§349

163.   Plaintiffs reallege all facts contained in prior paragraphs as if fully rewritten herein.

164.    This Third Cause of Action seeks damages against both CitiMortgage and CENLAR FSB for violations that occurred after CENLAR FSB identifies itself to the borrowers as the transferee servicer in April 2019.

165.    On or about May 2019 Plaintiff submitted an application for mortgage modification with CENLAR FSB. On or about August 7, 2019 Defendant CENALR transmitted a denial letter stating that he had been denied for all home retention options. See supra **Exhibit "U"**.

166.    The language used in the form denial letter at issue here is likely to mislead a reasonable consumer acting reasonably under the circumstances because the language used would cause a reasonable consumer to be unclear about the reason for the denial.

167.    The denial letter did not provide a specific reason for the denial. Plaintiffs who appealed the form generated denials in a timely manner were essentially meaningless because CENLAR did not perform a calculation for a modification that could result in an appealable decision. The deception is aimed at the general public and to consumers whose loans are serviced by CitiMortgage and CENLAR.

168.    CitiMortgage and CENLAR engage in a pattern and practice against all consumers who are struggling to pay their mortgages and who seek mortgage assistance in an effort to obtain a home retention option.

169.    As a result of CENLAR's failure to comply with and and 3 NYCRR §419(7), 3 NYCRR §419(10), 12 C.F.R. §1024.38(a), (b)(1), (b)(2)(i) and (b)(2)(ii) Plaintiffs were not properly evaluated for home retention options pursuant to 12 C.F.R. §1024.41(c) and 12 C.F.R. §1024.41(d) and 3 NYCRR §419(10).

170.    Before the time period in which Plaintiff could appeal the denial of the loan modification, September 16, 2019, on August 13, 2019 Plaintiff moved for judgment of foreclosure and sale by serving its motion on the NYSCEF system. This is a direct violation of 12 C.F.R. §1024.41(g) and 3 NYCRR §419 (10).

171.    Instead of conducting a proper review pursuant to transparent guidelines and loss mitigation procedures that are required to be made available to borrowers pursuant to 12 C.F.R. §1024.38, 12 C.F.R. §1024.41 and 3 NYCRR §419(10)(a)(5).    CENLAR engages in deceptive practices to avoid disclosure to consumers of said policies and procedures. The suppression or omission of these facts from consumers seeking mortgage assistance thwarts consumers' rights to access this information and make informed decisions about offers of mortgage assistance.

172.    Citi's and CENLAR's actions are in derogation of federal and state law that require transparency in the mortgage loan servicing and mortgage modification application process.

173.    Upon information and belief, Defendants have failed to consider all mortgage assistance programs by steering consumers to programs of Defendants' choosing that are financially advantageous to defendants. Defendants' actions jointly and severally have prevented the loan from being modified and has directly caused the foreclosure action to progress to a motion for judgment.

174.    Citi and CENLAR are engaged in a pattern and practice of conduct that is hostile to Plaintiffs' rights to a good faith, lawful, and compliant review of requests for mortgage assistance in derogation of the letter and the spirit of the applicable law.

175.    Citi and CENLAR have been lawfully noticed with error and have failed to correct said errors.

176.    Citi and CENLAR's conduct have caused injury and damage to the Plaintiffs.

177.    Defendants' obstruction of the lawful modification process is the direct cause of the Plaintiff being unable to avail themselves of being able to mitigate the arrears and repay the arrears to cure the delinquency pursuant to a lawful process governed by RESPA and 3 NYCRR §419.

178.    Defendants' conduct is not the proximate cause of the Plaintiffs' default. Defendants' conduct is the proximate cause of the Plaintiff's inability to cure the default and all damages that extend from Defendant's unlawful misconduct. Plaintiffs have

suffered actual damages in the form of economic damages resulting from CitiMortgage's misconduct in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

179.    Plaintiffs have suffered further damage because Plaintiffs would have been eligible for a loan modification under the HAMP guidelines.

180.    But for the unlawful failure to review Plaintiffs for a loan modification and for the resulting denial of the loan modification, Plaintiff have lost substantial equity in their home.

181.    Damages for lost equity are measurable and are not speculative based upon current real estate values and market interest rates as compared to the amount owed by Plaintiffs and the future value of the home capitalized at a fixed interest rate marked to current interest rates or the interest rate at the time of the CitiMortgage's/Defendants' malfeasance.

182.    Plaintiff has suffered actual damages in the form of economic damages resulting from CENLAR's misconduct in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

183.    Plaintiff has suffered actual damages in the form of noneconomic damages resulting from CENLAR's misconduct in the form of mental anguish, a category of damages within which include stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of CENLAR's misconduct on the Plaintiff's normal life.

WHEREFORE, premises considered, Plaintiff demands judgment against CitiMortgage and CENLAR for all lawful damages in an amount the jury deems reasonable and may award.

## FOURTH CAUSE OF ACTION AGAINST CITIMORTGAGE AND CENLAR FSB, VIOLATION OF 15 U.S.C. §1692, et seq. THE FAIR DEBT COLLECTION PRACTICES ACT

184.    Plaintiff realleges all facts contained in prior paragraphs as if fully rewritten herein.

185.    During the year 2020 beginning in April 2020 Plaintiffs attempted to obtain a modification of their loan. On June 18, 2020 Defendants denied Plaintiffs fifth application stating that the Plaintiffs were ineligible for a loan modification. **Exhibit "Z" [Complaint Attachment "1-26"],**

186.    15 U.S.C. §1692(f) provides in relevant part:

**False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(2) The false representation of --

(A) the character, amount, or legal status of any debt; or

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

187.    CENLAR FSB violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes the use of false, deceptive or misleading means to collect or to attempt to collect a debt. That is, CENLAR's efforts to steer consumers to financially disadvantageous loan modifications, dual-tracking, and false or deceptive statements about loss mitigation options and consumer's rights to mortgage assistance are false, deceptive and misleading.

188.    CENLAR violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect a consumer debt. CENLAR's efforts to subvert consumer protections to advance CENLAR's financial interests and to continue to push for foreclosure while using schemes and artifices to deny affordable mortgage loan modifications constitute unfair and unconscionable means to attempt to collect a debt.

189.     The foreclosure initiated by CENLAR against the Plaintiffs remains pending, and the Plaintiffs continue to accrue additional legal fees and costs. Plaintiff has attempted on not less than five (5) separate occasions to modify the mortgage loan. The Defendants have rejected their applications using artificial excuses to deny Plaintiffs' applications.

190.     As of the date of the filing of this Complaint, Defendants jointly as principals and agents continue to attempt to collect the debt on the note without attempting to review the Plaintiffs for a loan modification as required by law.

191.     In addition, CENLAR conduct has caused the Plaintiffs to suffer great emotional distress driven by the fear that they might lose their home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

192.     CENLAR's conduct was outrageous, willful and wanton, and it showed a reckless disregard for the Plaintiff's rights. Plaintiff has had to engage counsel to receive statutory compliance and for lawful review of their modification applications insofar as a lawful review would have yielded a lawful modification plan offer from Defendants.

193.     Plaintiff has suffered actual damages in the form of economic damages resulting from CitiMortgage's and CENLAR's misconduct in the form of attorney's fees, costs, time spent attempting to address the foreclosure including both personal and work time.

194.    Plaintiff has suffered actual damages in the form of noneconomic damages resulting from CENLAR's misconduct in the form of mental anguish, a category of damages within which include stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of CENLAR's misconduct on Plaintiff's normal life.

WHEREFORE, premises considered, the Plaintiff demands judgment against CENLAR for all lawful damages in an amount the jury deems reasonable and may award.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

Respectfully submitted,

_____/S/_____
Charles Wallshein Esq.
Attorney for Plaintiffs Kaplan
35 Pinelawn Road
Suite 106E
Melville, NY 11747
631 824-6555
cwallshein@wallsheinlegal.com